UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

THEODORE STREATER
Institutional ID No. 01430922

                 Plaintiff,

v.

LORIE DAVIS, *et al.*,

                 Defendant.

No.  5:19-CV-00263-H

## ORDER ACCEPTING IN PART THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge made findings, conclusions, and a recommendation (FCR) in this case. (Dkt. No 29.)  Plaintiff filed objections. (Dkt. Nos. 33, 34, 35, 36.)  The Magistrate Judge recommended that the Court dismiss all but one of Plaintiff's claims as frivolous or for failure to state a claim.  Specifically, the Magistrate Judge recommended that only Plaintiff's claim for injunctive relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA) against Defendant A. Gonzalez—in his official capacity as warden of the Smith Unit—should proceed.

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  In contrast, the district judge reviews any unobjected-to findings, conclusions, and recommendations for plain error.  The Court has examined the record and reviewed the unobjected-to portions of the FCR for plain error and, finding none, expressly accepts and adopts those portions of the Magistrate Judge's findings, conclusions, and recommendation.

Additionally, in light of Plaintiff's specific objections, the Court has conducted a de novo review of the relevant portions of the FCR and the record in this case. Many of Plaintiff's objections are either restatements of arguments made in his amended complaint (as supplemented by his testimony at the *Spears* hearing[1]), arguments thoroughly addressed by the FCR, mere disagreements with the Magistrate Judge's wording, or conclusory statements insisting that his claims have merit. The Court finds it unnecessary to address some of these objections. Thus, except as noted below, Plaintiff's objections are overruled, and the Court expressly adopts the Magistrate Judge's reasoning.

### 1. Plaintiff's Claims

This lawsuit arises out of events following Plaintiff's transfer from the Telford Unit of the Texas Department of Criminal Justice (TDCJ) to the Smith Unit of the TDCJ. Plaintiff sued 14 Defendants—including employees of the TDCJ and the TDCJ itself—alleging a variety of constitutional violations under 42 U.S.C. § 1983, as well as the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Safe Prisons Program and Prison Rape Elimination Act (PREA). He seeks monetary damages, injunctive relief, and certification of his case as a class action.

Plaintiff's allegations begin with his transfer from the Telford Unit to the Smith Unit on November 7, 2019.[2] He complains of incidents that occurred primarily at the Smith Unit

---

[1] *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985).

[2] This case was originally filed in the United States District Court for the Eastern District of Texas, Tyler Division, and the case was transferred to this Court after the Eastern District determined that a substantial portion of the incidents giving rise to Plaintiff's case occurred at the Smith Unit. (Dkt. No. 4.)

from the date of his arrival until the filing of his amended complaint on December 8, 2019. (Dkt. No. 9.) However, some of his claims are against Telford Unit employees for actions taken after his transfer to the Smith Unit.

Plaintiff is an experienced litigant who has filed several federal civil actions challenging various aspects of his confinement in different institutions over the past several years. The Court finds it pertinent to note that Plaintiff recently prevailed on appeal in a case against TDCJ officials who work at the Eastham Unit in Houston County, Texas. *See Streater v. Allen*, USCA No. 18-40870 (5th Cir. March 19, 2020); No. 9:15-CV-00068 (E.D. Tex., Lufkin Div.). Following remand and a jury trial on some of his claims in that case, the jury found that one of the defendants—Sharon Allen—"retaliated against Plaintiff for the exercise of his First Amendment right to complain to prison officials." *See* No. 9:15-CV-00068, Dkt. No. 213 at 1 (E.D. Tex., Lufkin Div., July 22, 2021). The Eastern District case is relevant because some of the allegations in this case stem from what Plaintiff describes as a conspiracy to transfer him from the Telford Unit (located in the Eastern District) to the Smith Unit (located in this district), in retaliation for his filing the lawsuit against the Eastham Unit (located in the Eastern District) employees.[3]

Plaintiff sues 14 defendants in their individual and official capacities: (1) Lorie Davis, (former) Director of TDCJ-CID; (2) A. Gonzalez, Smith Unit Warden; (3) Captain Miller, Smith Unit food service captain; (4) Officer Flores, Smith Unit food service officer; (5) Mrs. Harris, Smith Unit Classification Supervisor; (6) Anthony Cubb, Telford Unit medical staff member; (7) Chaplain Earnest, Smith Unit chaplain; (8) Mrs. Reimer, Smith Unit grievance

---

[3] The FCR notes that the only apparent connection between the defendants from the Eastham Unit, Telford Unit, and Smith Unit, is their shared employer—the TDCJ. (*See* Dkt. No. 29 at 39.)

supervisor; (9) Ms. Rebber, Smith Unit legal mail supervisor; (10) Sergeant K. Vasquez,

Smith Unit Safe Prison/PREA supervisor; (11) Lieutenant Aynes, Smith Unit lieutenant;

(12) Unknown Telford Unit Employees; (13) One Unknown Classification Officer; and

(14) TDCJ.

Plaintiff's claims consist of a patchwork of allegations related to his unit transfer and

various conditions of his confinement since his arrival at the Smith Unit. The Magistrate

Judge organized Plaintiff's claims as summarized below:

a. Defendant Rebber exposed him to potential retaliation and violated his First Amendment rights by opening—outside of his presence—a sealed letter that was addressed to a reporter and contained details of his complaints about the conditions of his confinement.

b. Defendants Davis, Reimer, Aynes, and the TDCJ violated his right to redress of grievances by making the grievance process unavailable to him.

c. Defendant Vasquez violated his rights under the Safe Prisons Program and PREA.

d. Defendants subjected him to the following unconstitutional conditions of confinement:

    1. Forced medical treatment without the opportunity to opt out in the form of a transfer to and placement in the Smith Unit Expansion Cell Block (ECB) for inmates with heat restrictions.

    2. Assignment to a wing with offenders of mixed classification levels and mental health statuses—and a cellmate who was significantly younger and suffering from serious mental health issues—causing Plaintiff to fear for his own safety.

    3. Confinement in an unsanitary and unsafe cell in deliberate indifference to his serious medical, health, and safety needs.

    4. Unsanitary and poor-quality food service and preparation.

    5. Frequent illumination of his cell throughout the night, causing sleep deprivation and headaches.

e.   Defendants Davis, TDCJ, Cubb, Harris, Unknown Telford Unit Employees, One Unknown Classification Officer, and TDCJ discriminated against him in violation of the Equal Protection Clause, as well as the ADA and RA by denying him access to a variety of programs and benefits.

f.   Defendants Miller, Flores, Gonzalez, and Earnest violated his First Amendment right to free exercise of religion by failing to provide him with a pork-free diet when he first arrived at the Smith Unit.

g.   Defendants Gonzalez, Miller, Flores, and TDCJ were deliberately indifferent to his health and safety by failing to establish policies to ensure that his meal trays did not contain food items to which he is allergic in violation of his medically imposed dietary restrictions (i.e. peanut allergy and bean sensitivity).

h.   Defendants Gonzalez, Davis and TDCJ failed to establish an adequate policy and procedure to ensure disposal of "Inmate Locator Reports."

i.   Defendants subjected him to intentional infliction of emotional distress.

j.   Defendants Cubb, Harris, Unknown Telford Unit Employees, and One Unknown Classification Officer conspired to retaliate against him for pursuing litigation against other TDCJ employees and were deliberately indifferent to his health and safety needs.

k.   Defendants Cubb, Harris, Unknown Telford Unit Employees, and One Unknown Classification Officer were deliberately indifferent to his serious medical needs regarding his medical restrictions and work assignment.

l.   Defendants Gonzalez, Miller and Earnest violated his rights under RLUIPA by failing to establish a policy that would prevent Muslim inmates from having to choose between attending Jumu'ah (Friday prayers) or eating lunch.

**2.   The Magistrate Judge's Findings, Conclusions, and Recommendations**

The Magistrate Judge reviewed Plaintiff's claims as described in his amended complaint (which sought to incorporate his original complaint by reference) and permitted him to supplement his complaint through his testimony at the *Spears* hearing. (*See* Dkt. Nos. 9, 24.) The Magistrate Judge also received and reviewed authenticated records from the TDCJ for the relevant time period, including grievances, classification, chaplaincy, and

5

medical records. *See Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

After this screening, the Magistrate Judge recommended that only one of Plaintiff's claims should proceed to the next step in the litigation process. After thoroughly analyzing each of Plaintiff's claims, the Magistrate Judge recommended that Defendant A. Gonzalez—in his official capacity as warden of the Smith Unit—should be ordered to answer or otherwise plead to Plaintiff's RLUIPA claim alleging that he has been forced to choose between attending Jumu'ah (Friday prayers) or eating lunch since his arrival at the Smith Unit in November 2019. The Court, finding no objection and no plain error, accepts and adopts this recommendation. The Magistrate Judge then recommended that the Court dismiss Plaintiff's other claims with prejudice. As explained below, the Court finds that Plaintiff's objection to the dismissal of his ADA and RA claims should be sustained, in part, but the rest of his objections should be overruled.

**3.    Plaintiff's Objections**

Plaintiff filed general and specific objections and then two sets of supplemental objections. (Dkt. Nos. 33, 34, 35.) First, Plaintiff generally objected to the FCR, arguing that the Magistrate Judge made improper credibility determinations during the screening process. Then, Plaintiff specifically objected to the Magistrate Judge's findings on his claims regarding (1) the grievance process; (2) his housing assignment; (3) his classification; (4) the defendants' failure to protect him from his cellmate's erratic behavior; (5) his cell conditions; (6) food qualify, preparation, and distribution; (7) sleep deprivation; (8) equal protection; (9) the ADA and RA; (10) denial of pork-free meals in violation of the First Amendment's Free Exercise Clause; (11) meals containing items to which he is allergic;

6

(12) intentional infliction of emotional distress (IIED); and (13) deliberate indifference related to his medical restrictions and work assignment. As explained below, the Court overrules Plaintiff's objections, except, in part, his objection to the dismissal of his ADA and RA claims, which is sustained.

### A.     General Objection to FCR Credibility Determinations

Plaintiff objects to the overall stance of the FCR, contending that it "is based on inappropriate credibility determinations and exceeds the scope of the screening process." (Dkt. No. 33 at 1.) Plaintiff asserts that while the Court may hold an evidentiary hearing in support of screening under the PLRA, "it is improper to resolve factual disputes and to make credibility determinations and judgments at the screening" stage. *Id.*

It is true that "[i]n a *Spears* hearing, the district court may make only limited credibility determinations . . . ." *Norton v. Dimanza*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326-27 (5th Cir. 1986), *overruled on other grounds, Denton v. Hernandez*, 504 U.S. 25 (1992)). "[T]he most important consideration in a [Section] 1915(d) credibility assessment is the inherent plausibility of a prisoner's allegations based on objective factors." *Cay*, 789 F.2d at 326 (5th Cir. 1986). *See Gilbert v. Collins,* 905 F.2d 61, 63 (5th Cir. 1990). A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing, *Williams v. Luna,* 909 F.2d 121, 124 (5th Cir.1990), but the Court may require the defendants in prisoner-rights cases to construct an administrative record to assist the Court in determining whether the complaint is frivolous. *Cay,* 789 F.2d at 323 n. 4; *Martinez v. Aaron,* 570 F.2d 317, 319 (10th Cir. 1978) (establishing procedure approved in *Cay*).

In this case, the Magistrate Judge, in compliance with *Cay*, asked the Texas Attorney General to provide authenticated copies of Plaintiff's records. The Court used those records to make findings, conclusions, and recommendations as to whether any or all of Plaintiff's claims were frivolous or failed to state a claim. And, at this stage in the screening process, the Court must accept Plaintiff's allegations as true and cannot rely on the written records to rebut Plaintiff's factual allegations. *See Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990) (holding that prison records could not be used to refute plaintiff's *Spears*-hearing testimony). However, "pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chimm v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

"A complaint, as amended by a *Spears* hearing, may be dismissed pursuant to a Rule 12(b)(6) motion by the defendant or by 28 U.S.C. § 1915(d) if it lacks an arguable basis in law." *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995) (footnotes omitted). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (internal quotations omitted). Moreover, Section 1915(d) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). For example: complaints like Plaintiff's claims urged under the PREA—alleging the violation of a nonexistent legal right—are legally baseless.

Plaintiff understandably takes issue with the Magistrate Judge's conclusion that his allegations, for the most part, failed to state a legal basis for relief. But the Court notes that the Magistrate Judge accepted Plaintiff's allegations as true. (*See* Dkt. No. 29 at 2, 16, 47.) Plaintiff seems to suggest that *any* conclusion that his allegations failed to state a claim must be the result of a credibility determination. However, the Court finds that applying relevant legal standards to factual allegations—taken as true—is the opposite of a credibility determination. Instead, it is a critical part of the screening process for the Magistrate Judge to dig beneath the often-conclusory allegations of a pro se complaint to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. That some of those allegations will fail to state a legal basis for relief does not amount to an improper credibility determination. Thus, Plaintiff's general objection is overruled.

### B.    Grievance Process and Retaliation

Plaintiff complains that the Smith Unit offender grievance process violated his constitutional rights in a variety of ways. First, Plaintiff alleges that Defendant Reimer failed to process offender grievances according to TDCJ policies. (Dkt. No. 9 at 8.) Second, Plaintiff alleges that Defendants Davis, Reimer, and TDCJ failed to establish a procedure where prisoners are issued a log number so they can verify the submission of grievances. (*Id.* at 9.) Third, Plaintiff asserts that the failure to establish a grievance submission verification procedure allowed Defendant Reimer to conceal, destroy, and deny the filing of grievances. (*Id.*) In support of those claims, Plaintiff alleges that he has filed grievances since his arrival at the Smith Unit, but they disappear and are never acknowledged or addressed. Finally, Plaintiff alleges that Defendant Aynes's threatening actions made the grievance procedure unavailable to him. (*Id.*)

9

Plaintiff's claims against Defendant Aynes are the result of an incident that occurred on the day he arrived at the Smith Unit when he and other inmates witnessed unidentified officers assaulting an inmate. When another inmate named Sims questioned the use of force and said he was going to file a grievance, Plaintiff alleges that Defendant Aynes struck Sims in the head with a walkie-talkie, opening a gash over his eyebrow. (*See* Dkt. No. 1 at 7.) Later, Plaintiff claims that Defendant Aynes stated to the group "[a]nybody else want to file a grievance? Ya'll [sic] gonna learn how grievances get answered on the Smith Unit. I run this [expletive]! Welcome to the real world." (Dkt. No. 1 at 7.) Plaintiff deduced from this single incident that Defendant Aynes would retaliate against him with physical violence if he ever filed a grievance at the Smith Unit.

The Magistrate Judge concluded that Plaintiff failed to state a viable constitutional claim based on his allegations that the grievance process was unavailable to him. (Dkt. No. 29 at 15–17.) Specifically, the Magistrate Judge found that Plaintiff did not have a constitutional right to have grievances resolved to his satisfaction. (*Id.* at 15.) More fundamentally, the Magistrate Judge found that Plaintiff did not possess a liberty interest in having access to a prison grievance procedure in the first place. (*Id.* at 16.) Additionally, the Magistrate Judge concluded that Defendant Aynes' purported threats did not violate Plaintiff's constitutional rights because verbal threats or harassment by a correctional officer do not provide the basis for a viable Section 1983 claim. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)).

Plaintiff objects to the characterization of his claims as only being about the resolution of his grievances. And he asserts that the FCR relied incorrectly on case law involving grievances that had received responses—which he argues are distinguishable from

10

his complaint about a process that refuses to acknowledge the filing of the grievances, threatens prisoners for using the grievance process, or both. (Dkt. No. 33 at 2.) So, he claims that the process itself was unavailable, which he asserts is a violation of his First Amendment rights. Additionally, Plaintiff argues that Defendant Aynes's threats went beyond verbal threats because he assaulted a different offender "as an example of what he would do to any offender who chose to exercise their right to redress of grievance." (*Id.* at 3.) Plaintiff also points to affidavits of other inmates to support his claims that "assaults were how grievances are dealt with," and unsworn declarations from Smith Unit offenders that "corroborate the fecklessness and unavailability and dangerousness of using the grievance process." (*See* Dkt. No. 33 at 2.) But to be clear, Plaintiff does not allege that he was personally assaulted in response to any grievance he filed.

i.     **Plaintiff has no right to a grievance procedure.**

The Court understands Plaintiff's objection that his claim is not simply about resolution of grievances, but rather that the grievance procedure was entirely unavailable to him. Even so, the Magistrate Judge's finding that he failed to state a claim is correct. Congress requires inmates to exhaust their "administrative remedies as are available . . . ." 42 U.S.C. § 1997e(a). A prison system is not, however, required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established a grievance procedure or fails to adhere to it. 42 U.S.C. § 1997e(b). Thus, Plaintiff's allegations that the defendants failed to establish procedures or to process grievances according to such a procedure simply do not support a constitutional violation.

The Magistrate Judge's conclusion is consistent with well-established case law in this circuit. As succinctly explained by another district court, "Congress established the

11

exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedure." *Stafford v. McKay*, No. 5:10-CV-35, 2010 WL 4274758, at *9 (E.D. Tex. Sept. 27, 2010), rep. and rec. adopted, 2010 WL 4286162 (Oct. 28, 2010). Indeed, the Fifth Circuit has explained that "[an inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. Mar. 15, 2002) (explaining that "[a]n inmate does not have a constitutional entitlement to a grievance procedure," and that "violation of the grievance procedure does not amount to a constitutional violation") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996)). Thus, Plaintiff's claims that the defendants failed to process—or even provide a procedure for processing—grievances at the Smith Unit are meritless. Likewise, his claims that the lack of a procedure made it possible for Defendant Reimer to conceal, destroy, and deny the filing of grievances must fail. Plaintiff's objections are overruled.

### ii. Defendant Aynes's actions against another inmate did not violate Plaintiff's constitutional rights.

Plaintiff's claims that Defendant Aynes's actions made the grievance process unavailable to him require some additional discussion. Plaintiff couches his claims against Aynes in terms of retaliation. In other words, Plaintiff claims that Aynes' assault on another inmate who voiced his intention to file a grievance against officers, coupled with his

implied threat that other offenders who filed grievances might be assaulted as well, amounts

to retaliation.  And, according to Plaintiff, this preemptive retaliation later prevented him

from exercising his First Amendment right to file grievances at the Smith Unit.

Plaintiff places special emphasis on *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016), which

he cites for the proposition that "when prison officials use threats and intimidation to

prevent a prisoner from using the grievance system, or 'thwart inmates from taking

advantage of a grievance process through machinations, misrepresentations, or

intimidation' those actions violate a prisoner's First Amendment rights." (Dkt. No. 33 at 2.)

But Plaintiff misinterprets *Blake*, which says nothing about when a prisoner's First

Amendment rights are violated, and it does not support a cause of action against prison

officials.

Instead, *Blake* concludes, based on the textual exception in 42 U.S.C. § 1997e(a)

itself, that a prisoner is not required to exhaust remedies prior to filing suit if remedies are

unavailable.  *Id.* at 1855–59.  An administrative remedy may be unavailable if (1) despite

what regulations or materials may promise, prison officials are "unable or consistently

unwilling to provide any relief to aggrieved inmates," (2) "an administrative scheme [is] so

opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or

(3) prison administrators "thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Id.* at 1859–60.  In short, *Blake*

says that Officer Aynes's alleged actions may excuse Plaintiff from the PLRA's requirement

that he exhaust his administrative remedies prior to filing a lawsuit, but it does not create a

basis for Plaintiff to file a lawsuit.  So, *Blake* is of no help to Plaintiff, and his objections to

the FCR based on *Blake* must be overruled.

Plaintiff's claim that Aynes' actions amount to retaliation are similarly without merit. The Magistrate Judge discussed the standard for establishing a claim for retaliation with respect to Plaintiff's claims stemming from his transfer to the Smith Unit. (*See* Dkt. No. 29 at 38). The same standard must be applied to Plaintiff's claim here: "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995). This is a "significant burden" that requires the production of "direct evidence of motivation or, the more probable scenario, . . . 'a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (quoting *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir.1988)). "Mere conclusory allegations of retaliation" are insufficient. *Id.*

Plaintiff alleges, essentially, that Aynes threatened him with physical violence as a consequence for filing future grievances. In support of this claim, Plaintiff mentions the Fifth Circuit's remand of his Eastern District case for the proposition that retaliation can be present when an officer assaults someone besides the claimant. (*See* Dkt. No. 33 at 3 (citing *Streater v. Allen,* 805 F. App'x 293 (5th Cir. March 19, 2020))). But as explained by the Magistrate Judge, verbal threats, abusive language, or other harassment are simply not sufficient to state a constitutional claim. (*See* Dkt. No. 29 at 16–17.) To the extent Plaintiff alleges that Defendant Aynes' actions on the day of his arrival at the Smith Unit prevented him from exercising his First Amendment right to file any grievances, the Court finds no support for the retaliation allegation. The preemptive nature of the threat to Plaintiff's ability to file grievances in the future necessarily defeats any plausible chronology of events.

14

At most, Plaintiff has alleged that he witnessed Defendant Aynes retaliate against Sims; but Plaintiff has no standing to sue for harm done to another inmate.

Likewise, Plaintiff's attempt to draw a parallel to his claim in *Streater v. Allen* fails because it is based on a misstatement of the Fifth Circuit's decision in that case. There, Plaintiff alleged, among other things, that prison officials retaliated against him for filing grievances by assigning him to a work crew overseen by an officer who assaulted inmates without cause. *See Streater*, 805 F. App'x at 295. The district court granted summary judgment in favor of the defendants based upon an affidavit that contradicted Plaintiff's allegations regarding the reasons for his housing and work assignment. *Id.* at 296. The Fifth Circuit vacated and remanded the retaliation claim, essentially finding that the district court made an improper credibility determination on summary judgment. *Id.* (citing *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017)). Although the Fifth Circuit acknowledged that a "transfer to a more dangerous section of the same prison is a sufficiently retaliatory act to support a § 1983 claim," it did not conclude as a matter of law that retaliation can be present even when an officer assaults someone besides the claimant. *See id.* (quoting *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006)). And more recently, the Fifth Circuit has found that vague implied "promises of violence" to prevent inmates from using the grievance procedure "are, without more, insufficient to state a claim of either retaliation or an Eighth Amendment violation." *Walter v. Perkins*, No. 20-30547, 2021 WL 5458110, at *1 (5th Cir. Nov. 22, 2021) (citing *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005); and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)). Thus, while Defendant Aynes' alleged behavior may have been unprofessional and inexcusable, Plaintiff has not met the significant burden required to state a claim of

15

retaliation. Additionally, this claim is undermined by Plaintiff's testimony that he did submit at least one grievance at the Smith Unit prior to filing this lawsuit, and his acknowledgment that he was not assaulted by Aynes as a result. (*See* Dkt. No. 29 at 9.) Plaintiff's objection on this claim is overruled.

### C.    Conditions of Confinement

Next, the Magistrate Judge organized Plaintiff's conditions-of-confinement claims in the following categories: (1) ECB housing assignment, housing classification, and cellmate conduct; (2) cell conditions and food quality; and (3) sleep deprivation. The Magistrate Judge concluded that Plaintiff failed to state a cognizable claim in each category and recommended that they be dismissed with prejudice.

#### i.    ECB Housing Assignment, Housing Classification, and Cellmate Conduct

Plaintiff complains that his placement in ECB housing and classification as a heat-restricted inmate constitutes forced medical treatment, which he should be entitled to refuse. Plaintiff also complained that Defendants violated his rights when he was placed in housing with a younger, mentally unstable cellmate who sexually harassed and assaulted him by attempting to hug him on two or three occasions, and who threatened—but did not assault—him in the dayroom. Additionally, Plaintiff complains that he was unable to sleep in the cell due to his fear of his cellmate's erratic behavior.

##### a.    Plaintiff's ECB assignment does not constitute forced medical treatment.

Plaintiff's objection to the FCR's analysis of this claim is a restatement of arguments made in his amended complaint. He cites *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990), for the proposition that a competent person has a liberty interest in refusing

16

unwanted medical treatment.  But Plaintiff provides no support for his conclusory assertion

that merely being housed in the ECB amounts to medical treatment—forced or otherwise.

The Magistrate Judge cited a great body of precedent clearly demonstrating that prisoners

have no constitutional right or interest in being housed in a particular prison or facility.  (*See*

Dkt. No. 29 at 18–19.)  Moreover, to the extent Plaintiff's placement in the ECB is based on

a medical classification, Fifth Circuit precedent makes clear that disagreement with a

medical classification is not enough to state a claim under Section 1983.  *See Wilson v.*

*Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir.

1989).  Plaintiff's conclusory objection is overruled.

> **b.    Plaintiff's cellmate assignment did not violate his
>          constitutional rights.**

Next, the Magistrate Judge construed Plaintiff's claims regarding mixing mentally ill

inmates with those that are not mentally ill as a failure-to-protect claim and concluded that

Plaintiff had failed to meet the stringent standard for such a claim.  (*See* Dkt. No. 29, 19–

20.)  The Magistrate Judge also found that "[a] failure to protect claim that fails to allege

any resulting physical injury does not state an Eighth Amendment violation entitling a

prisoner to compensatory damages."  (*See* Dkt. No. 29, 20 (citing *Glenn v. Barber*, No. 2:12-

CV-00237, 2013 WL 2458622, at *6 (S.D. Tex. June 5, 2013))).  But Plaintiff argues that the

claim is one of deliberate indifference by the defendants because his cellmate was obviously

unstable as demonstrated by his numerous transfers to mental health institutions and prior

violent behavior while incarcerated.  (Dkt. No. 33 at 4.)  Plaintiff argues that he is not

required to show a physical injury from sexual assault and that he is entitled to punitive

damages regardless.  (*See id.*)  Further, Plaintiff reiterates the fact that he was unable to sleep

17

in the cell due to the constant threat of his cellmate's erratic and unstable mental condition and aggressive behavior. (*Id.*)

In support of his objection, Plaintiff cites *Gates v. Cook*, 376 F.3d 323, 342–43 (5th Cir. 2004), which involved claims regarding problems stemming from inadequate mental health care afforded inmates on death row. In *Gates*, a death row inmate brought suit on behalf of himself and other death row prisoners in Mississippi. He alleged certain conditions of confinement on death row—including exposure to and behavior of psychotic inmates in adjacent cells—violated the Eighth Amendment's prohibition against cruel and unusual punishment. *Id* at 327. After certifying the case as a class action, the trial court found that a number of the conditions on death row violated the Eighth Amendment and ordered the Mississippi Department of Corrections (MDOC) to comply with injunctive relief designed to alleviate those conditions. *Id.* Relevant here, *Gates* involved evidence that "the isolation and idleness of Death Row combined with the squalor, poor hygiene, temperature, and noise of extremely psychotic prisoners create an environment 'toxic' to the prisoners' mental health." *Id.* at 343. The Fifth Circuit affirmed the district court's conclusion that MDOC officials displayed deliberate indifference to those conditions and that an injunction was needed. *Id.* But the Court finds no support in *Gates* for Plaintiff's contention that housing mentally ill inmates with mentally healthy inmates is deliberate indifference in every case, and Plaintiff's factual allegations are notably less egregious than those in *Gates*.

Plaintiff specifically objects to the Magistrate Judge's conclusion that he failed to state a claim as to his cellmate's allegedly "sexually assaultive" behavior based upon his failure to allege a physical injury. Plaintiff contends that he is still entitled to punitive

18

damages for the sexual assault, regardless of the fact that he did not suffer any physical injury. (Dkt. No. 33 at 4.) But Plaintiff is mistaken. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in Section 2246 of Title 18)." 42 U.S.C. § 1997e(e). However, hugging—much less attempted hugging—does not fall under any of the definitions of "sexual act," which require direct contact with genitalia. *See* 18 U.S.C. § 2246(2). Plaintiff has not alleged that his cellmate's behavior included any direct contact with genitalia. Plaintiff's objections on this point are overruled.

### ii.   Cell Conditions and Food Quality

Next, the Magistrate Judge thoroughly analyzed Plaintiff's claims regarding the conditions of his cell and food quality. (*See* Dkt. No. 29, 20–24.) The FCR concludes that Plaintiff failed to state a claim because (a) he has not demonstrated that the conditions of his cell deprived him "of the minimal civilized measures of life's necessities"; (b) his allegations do not demonstrate deliberate indifference on the part of any named Defendant; and (c) Plaintiff has not alleged harm greater than de minimis as a result of the conditions of his cell. (*Id.*) Likewise, with regard to his claims regarding food preparation and distribution, the Magistrate Judge concluded that Plaintiff had failed to state a claim of constitutional dimension. (*Id.* at 24.)

a.   **Despite his objections, Plaintiff failed to allege facts showing that the named defendants were subjectively aware of his conditions of confinement and the purported risk to his safety.**

In evaluating his cell conditions claims, the Magistrate Judge explained that "[o]nly those officials who know of and disregard 'an excessive risk to inmate health or safety' are liable under the Eighth Amendment for denying inmates humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). And the prison officials responsible for the deprivation must have a "sufficiently culpable state of mind." *Id.* (quotation omitted). "In prison-conditions cases[,] that state of mind is one of deliberate indifference to inmate health or safety. . . ." *Id.* (internal citations and quotation omitted). The Magistrate Judge noted that, at best, Plaintiff's allegations amount to negligence because the defendants perhaps should have known about the conditions in his cell. (Dkt. No. 29 at 23.) But Plaintiff failed to allege any facts demonstrating that Defendants were subjectively aware of both the conditions in which Plaintiff was housed and the specific risk they posed to his safety. (*Id.*) Additionally, the FCR found that Plaintiff had failed to demonstrate that the conditions in his cell deprived him "of the minimal civilized measures of life's necessities." (*Id.* at 22.)

In his objections, Plaintiff repeats the allegations from his complaint that the unclean conditions of his cell violated the Eighth Amendment. He objects to the Magistrate Judge's assertion that he has not alleged that any Defendant knew of the conditions of his cell and the specific risk to his safety. Specifically, he contends that he did name the defendants responsible for the conditions of his cell in his original complaint—that is, Defendant Davis,

20

as Director of the TDCJ-CID, and Defendant Sgt. Vasquez, identified as the Safe Prison/PREA officer. (*See* Dkt. No. 33 at 5.)

To prevail on a conditions-of-confinement claim, a plaintiff must plausibly state an objective and a subjective element. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). First, the plaintiff must establish objectively that the prison official deprived him of the minimal requirements for civilized measure of life's necessities and thus exposed him to a substantial risk of injury. *Id.* "Restrictive or even harsh" conditions do not create a deprivation; rather, the deprivation must be serious. *Coleman v. Dallas Cty. Jail*, No. 3:19-cv-3009-L-BN, 2020 WL 7029915, at *4 (N.D. Tex. October 22, 2020); *see Carter v. Brown*, No. 1:20-cv-01376, 2021 WL 1556374, *2 (W.D. La. April 1, 2021). Second, the plaintiff must show that the prison official subjectively knew of the risk the condition created and showed deliberate indifference to that risk to the plaintiff. *Id.* at *1–2 (citing *Arenas*, 922 F.3d at 620).

The Court finds that the conclusion on this claim does not turn on the identity of the defendants, but rather on the failure to meet the subjective prong of the deliberate-indifference analysis. And Plaintiff's own allegations fail to allege—much less demonstrate—that any named defendant, *including* Davis and Vasquez, were actually aware of the conditions of his cell and the specific risk they posed to his safety. In short, his allegation that they should have known about the conditions of his cell is not adequate to demonstrate deliberate indifference against Defendants Davis and Vasquez. Plaintiff also objects to the FCR's conclusion that his claim should be dismissed because he has not alleged more than de minimis harm, arguing that he may be entitled to nominal and

21

punitive damages. But, since Plaintiff failed to state a claim in the first place, his assertion is of no consequence.

### b.  Plaintiff's food-quality allegations fail to rise to the level of a constitutional violation.

Plaintiff next objects to the FCR regarding food quality—briefly summarizing his claims and seeking to bolster them by "rais[ing] the fact that a substantial number of prisoners on Smith unit contracted Covid-19," and that some have died. (*See* Dkt. No. 33 at 6.) While perhaps unpleasant, Plaintiff's food-quality claims do not describe an extreme deprivation of health, hygiene, or sanitation and appear more akin to negligence. The Fifth Circuit has held that negligent management of food services within a prison does not state a constitutional claim. *See Flowers v. Dent*, 21 F.3d 1109, 1994 WL 171707, *3 (5th Cir. 1994). In that case, the appeals court found no plausible claim where the plaintiff alleged that the kitchen facilities were unsanitary, that the "cleaning program was 'irregular and ineffective,'" that inmate workers were not properly trained, and that "food storage shelves were soiled with dirt and rodent droppings . . . ." *Id.* at *1–2.

Additionally, the Court is unpersuaded by Plaintiff's attempt to bolster his claim with the conclusory assertion that the alleged incidence of COVID-19 at the Smith Unit is appropriately traced to the food-handling program. *See Hodges v. Frasier*, 176 F.3d 479 (5th Cir. 1999) (finding no "clear or obvious error" in the district court's decision "that the possibility that HIV-positive inmates were involved in food preparation did not state a constitutional claim because 'AIDS is not transmitted by casual contact such as food preparation'"). According to information posted on the Centers for Disease Control and Prevention (CDC) website, "[c]urrently there is no evidence to support transmission of

22

COVID-19 associated with food."[4]  Courts are permitted to take judicial notice of information appearing on government websites if the information is not subject to reasonable dispute because it can be accurately determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *See, e.g., Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (approving the district court's taking of judicial notice of the website materials on the National Weather Service's website relating to the correlation between heat and death in adjudicating a claim that involved atmospheric heat at the prison); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 (1st Cir. 2010) (taking judicial notice of material on CDC website regarding Lyme disease—cause, symptoms, and treatment).  Plaintiff's objections are overruled.

### iii.    Sleep Deprivation

Plaintiff alleges that he was deprived of sleep because the "control picket" repeatedly turns on the lights in his cell at various times throughout the night, and he is unable to control them himself, causing Plaintiff to only be able to sleep for roughly one hour at a time. (*See* Dkt. No. 1 at 9; Dkt. No. 9 at 10.)  Plaintiff alleged that the lack of sleep has led to migraines and vision problems. (Tr. 3:04:40–:05:05.)  The Magistrate Judge found that his claims should be dismissed because Plaintiff had failed to name anyone responsible for controlling the lights as a defendant, and even if he had, he has not alleged that they were subjectively aware of his being deprived of sleep and any risks to his health associated with such deprivation. (*See* Dkt. No. 29 at 25.)  Moreover, the FCR concluded that his sleep-deprivation claims must fail based upon the Fifth Circuit's previous holding that

---

[4] Food Safety and Coronavirus Disease 2019 (COVID-19),
https://www.cdc.gov/foodsafety/newsletter/food-safety-and-Coronavirus.html (last visited Nov. 10, 2021).

disturbances throughout the night in a prison facility that operates 24 hours a day do not constitute an Eighth Amendment violation. (*Id.*)

In his objections, Plaintiff argues that the Magistrate Judge is essentially requiring him to prove his allegations at the screening level and that he is not required to state every allegation in his complaint or name every party responsible for the violations. (*See* Dkt. No. 33 at 6.) Plaintiff states that he did name the defendants personally responsible for the policies (or for failing to ensure the policies were being enforced), which led to the sleep deprivation—that is, Defendants Sgt. Vasquez and Lorie Davis. (*See* Dkt. No. 1 at 74, and Dkt. No. 9 at 50.) Plaintiff also argues that it is not a matter of whether the defendants "knew" of the risk posed by sleep deprivation, but whether they "should have known" of the risks. Finally, Plaintiff argues that he should be permitted to correct the alleged deficiency of his complaint and indicates that his claim should not be dismissed without the opportunity to conduct discovery to identify the party responsible for controlling the lights. (*See* Dkt. No. 33, 6–7.)

The Fifth Circuit has recognized that sleep constitutes a basic human need, and conditions designed to prevent sleep may violate the Eighth Amendment. *See Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). And "a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Moreover, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

24

But in *Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004), the Fifth Circuit also concluded—albeit in an unpublished opinion—that a "policy of constant illumination [was] reasonably related to the legitimate penological interest of guard security[,]" and that it is not plausible that a substantial risk of serious harm from near-continuous lighting was so obvious that defendants must have known of it. As a result, the Fifth Circuit affirmed the summary dismissal of a similar claim as frivolous and for failure to state a claim. *See id.* (finding that "[b]ecause the policy of 24-hour illumination does not violate the Eighth Amendment, Chavarria's complaint about the policy is based upon an indisputably meritless legal theory"); *see also id.* at 437 (Reavley, J., specially concurring to explain that "with deference to those who are concerned about Mr. Chavarria's illuminated cell, I regard this judicial attention as much ado about nothing. A little cloth over his eyes would solve the problem, negate deprivation, and escape this exercise in frivolity."); *Atkinson v. Johnson*, 74 F. App'x 365, 367 (5th Cir. 2003) (finding that "Atkinson failed to show that any substantial risk of harm to him resulting from implementation of" a policy of opening and closing cell doors at night "was obvious").

Here, Plaintiff's allegations do not show that the process of turning the lights on and off during the night is intentionally designed to deprive him of sleep or sufficient to state a viable Eighth Amendment claim. Even taking his allegations of true—including the acknowledgement that the lights are turned on to perform counts—Plaintiff offers nothing to suggest that the sleep disturbances of which he complains are done in an unnecessary or wanton manner in order to prevent him from sleeping rather than resulting from activities

necessary to keep a community of over 2,600 persons functioning.[5]  Finally, Plaintiff's own

suggestion that the defendants "should have known" of the harm he allegedly suffered as a

result of the nighttime lighting process amounts to nothing more than a negligence claim.

He has not demonstrated that the risk of harm, even if substantial, was so obvious that any

reasonable official would have recognized it.  "Actions and decisions by officials that are

merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."

*Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).  Plaintiff's objections are

overruled.

In sum, the Court notes that in their totality, while Plaintiff's allegations describe

uncomfortable conditions of his confinement on the Smith Unit ECB, they do not allege

that he was deprived of a minimum measure of life's necessities.  Accordingly, Plaintiff's

objections to the dismissal of these claims are overruled.

### D.    ADA, RA, and Equal Protection Claims

Plaintiff also brings claims under the ADA, RA, and Equal Protection Clause,

alleging that the defendants denied him—on the basis of his disability—benefits of the

programs and activities afforded non-disabled TDCJ prisoners.  (*See* Dkt. No. 9 at 6-7.)

Specifically, Plaintiff alleges that he was denied the following:  (a) housing commensurate

with his classification level; (b) a cellmate within 10 to 15 years his age range; (c) recreation

facilities commensurate with his security level; (d) food service equal to the quality received

by non-disabled TDCJ prisoners of his classification level; (e) food service commensurate

with his medical and religious dietary restrictions; (f) rights, privileges, and protections

---

[5] The Smith Unit has a maximum capacity of 2,234 inmates and employs over 400 individuals. *See*
http://tdcj.texas.gov/unit_directory/sm.html (last visited Nov. 29, 2021).

under the Safe Prisons/PREA; (g) work assignment commensurate with his medical restrictions; and (h) unit assignment commensurate with the ADA and RA. (*Id.* at 6.)

The Magistrate Judge determined that Plaintiff failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment because he has not alleged membership in a protected class. And the Magistrate Judge concluded that Plaintiff's ADA and RA claims should be dismissed for failure to state a claim because (1) any individual-capacity claims are not permitted under the statutes; (2) Plaintiff has failed to identify his alleged disability—instead he claims that he is being treated *as if* he is disabled due to his housing assignment in a heat-restricted unit; (3) he has not pleaded facts satisfying the elements of either an ADA or RA claim; and (4) even if he had adequately claimed that the TDCJ regarded him as disabled, his allegations fall far short of sufficiently alleging that denial of any benefits was by reason of his disability. (*See* Dkt. No. 29 at 26–30.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA prohibits discrimination by public entities, while the similarly-worded Rehabilitation Act (RA) applies to federally-funded programs and activities. 29 U.S.C. § 794(a). The same definitions and legal standards apply to both Acts, and the same remedies are available under both Acts. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

To state a claim under the ADA and RA, a plaintiff must show that (1) he has a qualifying disability, (2) he is being denied the benefits of services, programs, or activities or otherwise being discriminated against by a public entity, and (3) he is being discriminated

27

against because of his disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). A qualifying disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(a)(1). The ADA places an "affirmative obligation" on the state "to make reasonable accommodations" for persons with disabilities in the provision of public services. *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020). Intentional discrimination is required in order to recover compensatory damages under the ADA. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

The ADA protects people incarcerated in state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998); *Hale v. King*, 642 F.3d 492 (5th Cir. 2011). In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the "effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Tex. Dep't of Criminal Justice*, C.A. No C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (citing *United States v. Georgia*, 546 U.S. 151, 160 (2006) (allegations, if true, that defendant refused to provide reasonable accommodations to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled prisoner suffering serious punishment "without penal justification" and supported a claim under the ADA)).

Plaintiff's objections on this portion of the FCR are brief and to the point. First, Plaintiff argues that he is disabled within the meaning of the ADA, which "sufficiently alleged violations of his Equal Protection." (*See* Dkt. No. 33 at 7.) Then, he notes that he named the defendants in both their individual and official capacities. (*See id.*) Plaintiff also contends that he described his disabilities with particularity in his amended complaint and

28

also at the *Spears* hearing. (*Id.*) Additionally, Plaintiff asserts that his food allergies qualify as a disability under the statutes. (*See id.* at 8.)

In support of his objection, he points to paragraphs 1–7 of his amended complaint, which include details of his transfer to the Smith Unit, and certain medical restrictions that were in place at the time. (*See* Dkt. No. 9 at 3.) Indeed, the information provided in the amended complaint describes upper-body restrictions, work assignments, and physical assessment codes that "indicate that [he has] permanent conditions that require 'significant limitations' on [his] engaging in physical activities. (*See id.*) He claims that these conditions qualify as disabilities within the definitions of the ADA and RA. (*See* Dkt. No. 33 at 7.) Plaintiff further objects to the FCR's assertion that he did not plead facts satisfying the elements of the ADA and RA by pointing to the allegations in paragraphs 23–25 of his amended complaint. (*See* Dkt. No. 33 at 8, citing Dkt. No. 9 at 6-7.) There, Plaintiff describes services, programs, and activities allegedly afforded to non-disabled TDCJ prisoners, such as housing, recreation facilities, job assignments, and food service commensurate with his classification level, among other things. (*See* Dkt. No. 9 at 6.) And he alleges he was denied these benefits because of his disability. (*See Id.*) Plaintiff also alleged that the defendants discriminated against him based on—or because of—his disability by placing in him in a prison facility designed for high security prisoners while housing similarly situated heat-restricted prisoners of his minimum classification in non-high-security designed housing. (*Id.*)

Initially, the Court finds that Plaintiff's objections to the Magistrate Judge's analysis of his Equal Protection claim and the conclusion that the ADA and RA do not permit claims against individuals must be overruled. Disability, unlike race or national origin, is

29

not a suspect classification under Equal Protection analysis. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). And, although the ADA authorizes claims against a "public entity," it does not authorize individual liability. *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citing *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999)). So, Plaintiff's Equal Protection claims and any individual defendants named for violations of the ADA and RA must be dismissed.

Finally, the Court understands the Magistrate Judge's recommendation to dismiss Plaintiff's ADA and RA claims in light of the "complex and tangled weave of factual allegations" contained in his pleadings and testimony at the *Spears* hearing. But based on Plaintiff's clarification that, in his view, he is disabled under the ADA—rather than just "considered" disabled by the TDCJ—and the requirement to construe pro se allegations liberally, the Court finds that Plaintiff has sufficiently pled that Smith Unit officials knew of his alleged disabilities (including his food allergies) and either denied him the benefit of certain programs or failed to accommodate his conditions.[6] He claims that his disabilities qualify under the ADA and RA, that he has been denied the benefits of services, programs, or activities, and that he is being discriminated against because of his disability. Those allegations are sufficient to state claims under the ADA and RA. Thus, Plaintiff's objections are sustained, in part, and the Court finds that Defendant TDCJ should be required to answer or otherwise respond to Plaintiff's ADA and RA claims.[7]

---

[6] The Court notes that this is merely a finding that Plaintiff has pled facts sufficient to proceed through the course of the litigation—not a finding that his rights under the ADA and RA have, in fact, been violated.

[7] Plaintiff did not object to the Magistrate Judge's footnote concluding that any claims of conspiracy to discriminate under the ADA and RA should be dismissed, so any such claims will be dismissed accordingly. (*See* Dkt. No. 29 at 29, n.8.)

### E.    Removal of Plaintiff's Medical Restrictions

In his next claim, Plaintiff alleged that Defendant Cubb—a Telford Unit employee—was deliberately indifferent to his serious medical needs when he accessed Plaintiff's medical records after his transfer to the Smith Unit and removed many of Plaintiff's medical restrictions. Following removal of his medical restrictions, Plaintiff lost his medically restricted job and was instead assigned to perform tasks that exacerbated existing medical conditions.

The Magistrate Judge found that Plaintiff's claims, construed most generously, demonstrated that Cubb's actions were clearly erroneous given the fact that they were reinstated three days later, but amounted to little more than negligence. (*See* Dkt. No. 29 at 42.) Thus, Plaintiff failed to meet the "extremely high standard" required to state a deliberate indifference claim against Defendant Cubb. *See Domino v. Tex. Dept't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). And, even if Cubb's actions were the result of a nefarious motive, Plaintiff had not alleged facts showing anything beyond de minimis injury—which provides an additional ground for dismissal. (*See id.*)

In his objections, Plaintiff restates his previous allegations—essentially arguing that they support both the objective and subjective components of the deliberate-indifference analysis. He reiterates his belief that Cubb's actions were done "perniciously, without relying on any medical examination . . . ." (*See* Dkt. No. 33 at 9.) Plaintiff argues that "Cubb knew that the assessment of medical restrictions directly and primarily affects prison work assignments and a prisoner's physical ability or limitations relevant to a particular work assignment." (*Id.*) In his supplemental objections, Plaintiff expands on his allegation that Cubb knew what Plaintiff's physical restrictions were based upon his "PUHLES" code,

31

which was "3EP," meaning that he had "significant medical impairments" that were "permanent—no significant change in condition expected." (*See* Dkt. No. 34 at 2.) Despite this, Plaintiff alleges that on November 11, 2019, without ever having met or examined Plaintiff, Cubb deleted his medical restrictions and downgraded his significant and permanent medical conditions to reflect some minor condition. (*See id.*) Plaintiff further notes that following his placement on an unrestricted work assignment, he suffered injuries serious enough to result in a recommendation for surgery. (*See* Dkt. No. 33 at 11.) Plaintiff contends that his resulting injuries are more than de minimis.

Plaintiff repeats his conclusory assertions that Cubb must have known what the PUHLES codes meant and that his actions in deleting his restrictions were "knowingly malicious and deliberately indifferent." (*See* Dkt. No. 34 at 2.) Without offering any additional factual support, Plaintiff asks the Court to require Defendant Cubb to answer to his conclusory allegation that Cubb was deliberately indifferent to Plaintiff's medical needs. (*Id.*). But a "prisoner must show the defendant's 'actual knowledge and conscious disregard of the risk of harm to the plaintiff [and it] cannot be inferred from a prison official's mere failure to act reasonably [or] from negligence alone.'" *Thompson v. Sharad*, 847 Fed. App'x. 223, 224 (5th Cir. 2021) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The Court finds that Plaintiff's factual allegations show, at most, negligence or malpractice but not deliberate indifference. His objections are overruled.

32

4.    **Conclusion**

Except as noted above, Plaintiff's objections are overruled, and the Court accepts and

adopts the findings, conclusions, and recommendation of the Magistrate Judge.  As a result,

the Court orders:

(1)    The Court will enter a separate order directing service and requiring a

response on the following claims:

(a)    Plaintiff's claim for injunctive relief under RLUIPA against Defendant
        A. Gonzalez—in his official capacity as warden of the Smith Unit, and

(b)    Plaintiff's claims against Defendant TDCJ for violations under the
        ADA and RA.

(2)    All remaining claims and Defendants are dismissed with prejudice under

28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

(3)    There is no just reason for delay in entering a final judgment and final

judgment should be entered as to the above-described Defendants and claims pursuant to

Federal Rule of Civil Procedure 54(b).

(4)    All relief not expressly granted is denied and any pending motions are denied.

Judgment shall be entered accordingly.

Dated December _6_, 2021.

JAMES WESLEY HENDRIX
United States District Judge

33